IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RONNIE MCBRIDE, JR.                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:25-cv-187-SA-JMV

THE CROSSINGS AT TUNICA D/B/A
PARK BRIGHTON VENTURES, LLC;
WOGAN GROUP, LLC; AND JOHN
DOES 1-10                                                                              DEFENDANT

## ORDER AND MEMORANDUM OPINION

On May 30, 2025, Ronnie McBride, Jr. initiated this action by filing his Complaint [2] in the Circuit Court of Tunica County, Mississippi against The Crossings at Tunica d/b/a Park Brighton Ventures, LLC ("The Crossings") and Wogan Group, LLC. The Complaint [2] brings state law claims for premises liability and negligence. Wogan timely removed the case to this Court, premising federal jurisdiction upon 28 U.S.C. § 1332.

Now before the Court is The Crossings' Motion for Summary Judgment [30], which has been fully briefed and is now ripe for review. Having considered the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

### Relevant Factual Background

This lawsuit stems from an alleged spider bite McBride sustained inside his rental unit.

The Crossings owns an apartment complex located in Tunica County, Mississippi. In April 2023, McBride became a tenant of The Crossings and resided in apartment number 2012 along with his wife, Kiya. During the relevant timeframe, Wogan managed the subject apartment complex pursuant to a Management Agreement between it and The Crossings. Ashley Goodson, an employee of Wogan, was the property manager during the time McBride resided at the apartment complex.

According to McBride, he verbally notified Goodson of a "spider infestation" in his apartment "[b]etween late April [2023] and in May [2023] as well." [30], Ex. 4 at p. 9. He testified that he told her that he had a "spider problem" in his apartment on approximately four to five occasions. *Id.* at p. 10. He also testified that he asked Goodson to send someone to spray his apartment for spiders and that she indicated she would try to get it scheduled but it never happened. *See id.* at p. 13. For her part, Goodson denies ever having a conversation with McBride concerning spiders in his apartment during that time frame. She testified that McBride never made complaints about pests, that is, according to her, "[u]ntil he was bit." *Id.*, Ex. 3 at p. 18.

McBride testified that, on the morning of June 3, 2023, he was in the process of getting dressed near the closet of his apartment bedroom when he suddenly felt "excruciating pain like something [had] stung or bit[ten] [him.]" *Id.*, Ex. 4 at p. 8. At that time, he was unaware of what it was that had bitten him; however, he did notice that "it was something that had legs [and] was smashed up." *Id*. He testified that he told his wife, who was in the apartment on the morning in question, that he had been bitten by something on his left thigh. McBride did not immediately seek medical attention, but, when the pain did not subside, he went to the emergency room of Methodist Hospital in Olive Branch, Mississippi four days later. Sometime thereafter, he was referred to a physician located in Batesville, Mississippi for wound care. At his deposition, McBride testified that this doctor, whose name he could not recall, informed him that he had been bitten by a venomous spider "most likely a brown recluse." *Id.* at p. 9.

Pursuant to McBride's Lease Agreement with The Crossings, McBride, as the tenant, was responsible for informing The Crossings "immediately of any pest issues in [his apartment]" and allowing entry into his apartment "for pest control as contracted and performed by/on behalf of [The Crossings] on an as needed basis[.]" [34], Ex. 1 at p. 5. The Crossings charged McBride a

2

$30.00 fee for monthly trash and pest control in addition to his base rent amount. *See id.* at p. 1. The Lease Agreement also lists Wogan as the representative and agent for The Crossings and states that Wogan "… is authorized to receive notices and demands on behalf of [The Crossings] under the Lease[.]" *Id.* [1] Relatedly, pursuant to the Management Agreement between The Crossings and Wogan, Wogan was tasked with providing pest control and other services necessary for the operation of the apartment complex. *See* [34], Ex. 2 at p. 3. Again, McBride contends that he informed Goodson (an employee of Wogan) of the spider issue in his apartment prior to being bitten, but Goodson tells a different story. [2]

During her deposition, Goodson explained the process for tenants to receive pest control services. She testified that Wogan had a contract with a pest control company named "Nu Era" for the provision of routine pest control services at the apartment complex on an as-needed basis. [30], Ex. 3 at p. 16. An employee of Nu Era provided pest control services at the apartment complex on Monday of every week. With respect to servicing specific apartments, however, Goodson testified that the vendor could not enter a unit absent a request for pest control services from the tenant. She explained that typically this request would be in the form of a work order, which could be submitted by the tenant through an online portal, or they could also call the management office to make their request. She explained that the request was necessary because it constituted permission from the tenant for the pest control vendor to enter the requesting tenant's apartment. Goodson managed the tenants' requests for pest control services and maintained logs with the names and apartment numbers of those tenants who had made requests for service.

---

[1] Goodson signed McBride's Lease Agreement on behalf of Wogan and acting as an agent for The Crossings. *See id.* at p. 11.

[2] Specifically, Goodson testified that she first learned that McBride had a spider issue in his apartment when she was informed of the bite incident by Kiya as Goodson was attempting to contact McBride to inquire about a late rent payment.

After McBride's incident, Goodson sent a text message to all tenants of the apartment complex at the direction of Wogan's regional office. The text message stated as follows:

> Dear Crossing Residents, there has [sic] been an ample amount of calls about spiders. Please call the leasing office to request for pest control for Monday. Mgmt.

[34], Ex. 4 at p. 1.

Thereafter, McBride's apartment was serviced by pest control, which, according to him, made the spider issue worse. He eventually vacated his apartment.[3] As a result of the June 3, 2023 spider bite, McBride testified that he missed between two and three months of work and continued to receive medical treatment until August 8, 2023. This lawsuit followed.

In its Motion for Summary Judgment [30], The Crossings seeks dismissal of McBride's premises liability and negligence claims against it. McBride opposes the Motion [30].[4]

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct.

---

[3] Based on McBride's deposition testimony, he was evicted from his apartment for nonpayment of rent.
[4] To be clear, Wogan has not sought dismissal of the claims against it.

2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*[5]

At the outset, the Court attempts to clarify which claims The Crossings seeks dismissal of through its instant Motion [30]. In addition to his premises liability claim, McBride brings a claim for "negligence under the non-delegable doctrine" (Count II) and a general negligence claim (Count III) against The Crossings. [1] at p. 4, 6. In its Memorandum [31], The Crossings argues that "Mississippi law is clear that a principal, such as [The Crossings], may not be held liable for the alleged tortious actions of an independent contractor, i.e. Wogan. For that reason, [McBride's] claims against [The Crossings] for *premises liability and negligence* should be dismissed with prejudice." [31] at p. 2 (emphasis added). Based on this quoted argument, The Crossings appears to seek dismissal of all of McBride's claims based on a defense to vicarious liability as it does not

---

[5] Mississippi law applies because this action is before the Court on the basis of diversity jurisdiction. *See, e.g., Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

5

address the claims separately. Then, in its Reply [38], The Crossings argues that "[t]he Plaintiff's claim against the Defendant is for premises liability" and provides the reasons why that claim should be dismissed based partially on premises liability law. [38] at p. 2. The Reply [38] addresses no other claims. Ultimately, The Crossings' asserted basis for dismissal is unclear. It fails to argue that McBride's claims are based on the same theory of liability and are therefore subject to the same legal standards. The Court reiterates that, as the moving party, The Crossings "bears the initial responsibility of informing the district court of the basis for its motion[.]" *Nabors*, 2019 WL 2617240 at *1. Absent argument on the part of The Crossings in this regard, the Court cannot definitely conclude that The Crossings seeks dismissal of *all* of McBride's claims. To the extent McBride has asserted independent direct negligence claims against The Crossings in Counts II and III of the Complaint [2], the Court views The Crossing's Motion [30] as wholly inadequate as to the initial burden of establishing entitlement to judgment as a matter of law. Those claims will be permitted to proceed.

Having concluded that McBride's direct negligence claims are not subject to dismissal, the Court turns to McBride's premises liability claim.[6]

"Premises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of conditions or activities on the land." *Landry v. Vallman McComb Mall, LLC*, 369 So. 3d 616, 620 (Miss. Ct. App. 2023) (quoting *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (Miss. 2023)) (internal quotation marks omitted). "Mississippi courts employ a three-step process in determining premises liability: First, we must determine

---

[6] Again, in its Reply [38], The Crossings only argues that McBride's claim for premises liability against it should be dismissed. Additionally, in its initial Memorandum [31], The Crossings heavily relies on a premises liability case in seeking dismissal. Thus, since The Crossings has not made clear it seeks dismissal of the other claims, the Court limits its analysis to address the premises liability claim only.

whether the injured party was an invitee, licensee, or a trespasser at the time of the injury. Next, we must determine what duty was owed to the injured party by the business owner/operator. Finally, we must determine whether that duty was breached." *Id.* (internal quotation marks and citations omitted).

The parties do not dispute that McBride, as a tenant of apartment complex, was an invitee. *See Laird v. Sunbelt Mgmt. Co.*, 2016 WL 3093979, at *2 (S.D. Miss. June 1, 2016) (citing *Price v. Park Mgmt., Inc.*, 831 So. 2d 550, 551 (Miss. Ct. App. 2002)) ("A rent-paying tenant would obviously qualify as the landlord's invitee"). As such, The Crossings owed McBride "the duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition." *Landry*, 369 So. 3d at 620 (quoting *Hill v. Cent. Sunbelt Fed. Credit Union*, 349 So. 3d 1181, 1184 (Miss. Ct. App. 2022)) (internal quotation marks omitted). The Court next addresses whether The Crossings breached that duty.

To establish breach, a plaintiff must show "(1) a negligent act by the defendant caused the plaintiff's injury; or, (2) that the defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or, the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Walz v. HWCC-Tunica, Inc.*, 186 So. 3d 375, 377 (Miss. Ct. App. 2016) (quoting *Byrne v. Wal–Mart Stores Inc.*, 877 So. 2d 462, 465 (Miss. Ct. App. 2003)) (internal quotation marks omitted). In his Response Memorandum [35], McBride argues that "The Crossings, as property owner in this case, negligently maintained Ronnie McBride's apartment, directly resulting in the spider bite that caused his injury and damages. Under Mississippi law, The Crossings cannot delegate this duty." [35] at p. 5.

It is undisputed in this case that Wogan, as an independent contractor and agent of The Crossings, was responsible for maintenance of the apartment complex pursuant to the Management

Contract. Based on this fact, The Crossings argues that it cannot be held liable for McBride's injury and therefore his claim against it should be dismissed. In its Memorandum [31], The Crossings relies on the Mississippi Court of Appeals' decision in *Freeman v. CLC of Biloxi, LLC*, 119 So. 3d 1164 (Miss. Ct. App. 2013) to support is argument.

In *Freeman*, the Mississippi Court of Appeals resolved whether a premises owner "[could] be liable for the actions of its independent contractor… under the first theory of liability in a slip-and-fall case." *Id.* at p. 1169. In that case, the plaintiff fell over a puddle of water left by housekeeping staff employed by an independent contractor of CLC of Biloxi, LLC ("CLC")—the operator of a nursing home and premises owner. *Id.* at p. 1166. The trial court granted summary judgment in favor of CLC finding that it was not liable for the negligence of the independent contractor, and the Mississippi Court of Appeals affirmed. *Id.* at 1171. Of importance, the plaintiff argued that CLC owed her a non-delegable duty to keep the premises reasonably safe and to warn her of hidden dangers. *Id*. at 1170. In issuing its ruling, the appellate court acknowledged that the plaintiff raised "the nondelegable-duty exception" but ultimately did not address the argument in great detail. *Id.* at 1171. Instead, it passingly distinguished the cases plaintiff relied on in support of that argument, generally concluding that "none are slip-and-fall cases." *Id.* In other words, the court found that the exception did not apply in the context of that case. Notably, this case is not a slip-and-fall case, and McBride does raise the non-delegable duty exception. Because that issue was not addressed in *Freeman*, in addition to the difference in facts, this Court finds the case distinguishable.

The Mississippi Supreme Court has held that "[t]he general rule that a principal is not liable for the torts of its independent contractor has two notable exceptions." *Chisolm v. Mississippi Dep't of Transp.*, 942 So. 2d 136, 143 (Miss. 2006). One of those exceptions "applies where the

principal has a non-delegable duty." *Id.* In his Response Memorandum [35], McBride argues that "The Crossings cannot delegate their duty of maintenance to a management company to avoid liability here. The Crossings can delegate maintenance tasks to Wogan, but it cannot delegate ultimate liability for McBride's injuries to Wogan." [35] at p. 6.[7]

Given the facts of this case, the Court finds guiding the Mississippi Supreme Court's decision in *Weldon v. Lehmann*, 84 So. 2d 796 (Miss. 1956). In *Weldon*, a tenant sued his landlord for negligence after a suspended ceiling fell and damaged his merchandise and fixtures. *Id.* at 796. The lease agreement between the parties provided that the landlord would install the ceiling, and the landlord hired an independent contractor to do the work. *Id.* The issue presented on appeal was "whether a landlord is liable for the negligence of his independent contractor resulting in an unsafe condition of the premises when the landlord has obligated himself to make such repairs." *Id.* at 797. The court recognized a non-delegable duty in the landlord-tenant context explaining that the landlord could not "escape his duty by delegating to an independent contractor the making of the agreed alterations and repairs." *Id.* at 798.

The facts of this case are more akin to the facts of *Weldon* than to that of *Freeman*. Here, McBride does not allege that he was injured by a condition that was created by The Crossings' independent contractor; rather, he contends that The Crossings obligated itself to provide pest control services by virtue of the Lease Agreement and is liable for Wogan's alleged failure to adequately provide those services. For its part, The Crossings does not dispute that it agreed to provide pest control services to its tenants, and that it charged its tenants a fee above and beyond their monthly rent for the provision of those services. Similar to the landlord in *Weldon*, The Crossings assumed the specific duty of keeping its premises reasonably safe from pest infestation

---

[7] The Court notes that, in its briefing, The Crossings does not counter McBride's general contention that it owed him a non-delegable duty.

9

through its Lease Agreement, which, in the Court's view, is comparable to contractually agreeing to repair the premises.[8] McBride's own testimony that he informed Goodson of a spider issue in his apartment *prior* to being bitten and specifically requested pest control services that never came is sufficient to create a question of fact as to The Crossings' liability.[9]

In short, the Court finds that The Crossings has not met its burden of showing that it is entitled to summary judgment. *See Nabors*, 2019 WL 2617240 at *1. Its Motion [30] is therefore denied.

*Conclusion*

For the reasons set forth herein, The Crossings' Motion for Summary Judgment [30] is DENIED. McBride will be permitted to proceed to trial on all claims.

SO ORDERED, this the 28th day of July, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] Relying on *Weldon* in the landlord/tenant context, this Court has held that "only where there is an agreement for specific repairs will a breach of that agreement impose liability [upon the landlord] for personal injury." *Est. of Clarence Sims v. City of Aberdeen*, 2011 WL 132362, at *3 (N.D. Miss. Jan. 14, 2011) (citing *Weldon*, 84 So. 2d at 796) (additional citations omitted).

[9] The Court also notes that The Crossings appears to argue that the spiders in McBride's apartment did not constitute a dangerous condition. In a footnote of its Reply [38], The Crossings states that "[n]ot all spiders are dangerous." [38] at p. 4. However, it raises no such argument in its initial brief and it is well-established that "[a]rguments raised for the first time in a reply brief are generally waived." *Bryant v. Bogalusa Bayou R.R. LLC/Watco*, 2022 WL 3354068, at *1 (S.D. Miss. Aug. 12, 2022) (quoting *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)). Therefore, the Court need not address it.